This is a one-issue case. It seems to me like the issue is well-briefed, and therefore I intend to keep my remarks relatively short. The core issue is whether or not there was a fair or just reason to allow Mr. Jeronimo to withdraw his case. Is that the issue? Isn't the first issue whether you can appeal at all? Doesn't that turn on whether or not there was a knowing and voluntary waiver? Yes, Judge. The government did raise in its brief the issue of whether or not the waiver contained within the plea agreement precluded any appeal whatsoever. Why isn't that the end of it on direct appeal? And maybe there's a habeas petition that can be filed alleging ineffective assistance of counsel or trying to upset the agreement. But, you know, given where we are now, why isn't the waiver dispositive at this stage? Our answer to that is simple, Your Honor. There was a 2003 Ninth Circuit case, Pena, which is cited in our materials, which stands for the proposition that waivers of appeal contained within plea agreements must stand or fall along with the agreement with which they're a part of. All right. So the question is whether or not there was a voluntary and knowing waiver, which may in fact turn on whether there was an effective assistance of counsel, right? Which may not be the same standard as fair and just reason. So that seems to me to be where we need to go. Maybe I'm missing your point, Judge, but the way we read Pena is if the withdrawal of guilty plea is allowed, then the waiver, which is encompassed within that guilty plea, is just null and void. It's meaningless. And so the first issue is whether or not. That doesn't seem to me to be right. It seems to me that there's a different standard, and the standard is knowing involuntary waiver. In other words, you can't get to the withdrawal question, which is a slightly different standard, unless you get out from under the plea. So I would like you to address that question, whether there was an effective counsel such that there was not a knowing involuntary waiver. Very well. And that is a sub-part of our argument, that there was an effective assistance of counsel, that counsel's performance was below the standard which we expect and require of defense attorneys. And it is simply that the counsel advises defendants about the merits of the plea agreement, the sentencing guidelines, and all of those sort of specifics. And the counsel predicted an outcome, a sentence of 87 months. Well, if we're talking about predictions, you certainly lose, right? Because there's a lot of cases that say that. There are lots of cases that talk about mere predictions alone are not enough to invalidate a guilty case. So the question of whether or not there was a legal error made, in other words, whether the lawyer, whether there was enough in what Geronimo said under oath to at least to infer, and I don't know whether there is or not, that the lawyer essentially misinformed him about the law rather than misprojected something. And we mentioned that we have carried our burden. It's our burden to establish fair and just reason. We had an evidentiary hearing on the matter. At the evidentiary hearing, the only substantive evidence came from the testimony of the defendant. And in his testimony, he said, yes, I talked with my lawyer a lot. He predicted certain sentences. Actually, he says I had a deal with the attorney and I would get an 87-month sentence. But aside from that, his testimony was basically unreviewed, unrebutted. It is true on cross-examination, blistering cross-examination. The government pointed out the judge told you the maximum sentence would be 20 years. The judge told you it was up to him to decide. Didn't the government lawyer also say during the plea colloquy that we're going to try to hammer you for past convictions? That's going to be taken into account? Not in those words, but very close to those words. At the very conclusion of the plea colloquy, the government's attorney stood up and said, I want to point out, Your Honor, to the defendant that he has two prior criminal convictions, and we intend to raise those as a consideration as sentencing. And that was the end of it. Does the judge have a duty to tell the accused that he might be sentenced as a career criminal? No. As a lawyer? Yes, absolutely. Absolutely, yes. And that goes back to your question, Judge. Did this lawyer commit ineffective assistance of counsel? Absolutely. Let's assume that the lawyer has a duty to tell his client about that. Isn't that an issue that under a lot of our precedent has to be raised with a record that's suitable to assess ineffective assistance, which includes a statement from the lawyer about why he or she did what they did? And there's no record here of that. There's no statement submitted by the lawyer. Am I correct in that? There's a statement of the accused. My lawyer guaranteed me something. But there's no evidentiary record of what the lawyer advised the accused. The lawyer did not testify. That's correct. There's no affidavit. There's no evidentiary hearing with the lawyer. That's exactly right, Judge. Okay, so why wouldn't that, under our normal precedent, be something that you have to develop in a hapeas proceeding? We would submit to the court that it was our burden to establish a just and fair reason for withdrawal. I really think you're in the wrong ballpark on that one. So let's go back to ineffective assistance, okay? And I submit that by having the defendant testify and having his testimony go unrebutted or unrefuted, aside from impeachment on what I would characterize as collateral peripheral issues, that's enough. We established we carried our burden. Now, it could well have been that the government, they knew we were having an evidentiary hearing. And they knew what he was going to say, right? They knew that he was going to say that his lawyer did not tell him about the career criminal possibility. I presume the government knew that. That's what we were setting out in our briefs before the hearing. So this is an unusual situation because there was an evidentiary hearing. There was an evidentiary hearing on the fair and just reason question, which, as you say, encompassed the ineffective. Although I disagree with you about what the governing standard is, it certainly included that. And it is unusual in the sense that in the line of cases where we're talking about lawyers blowing predictions, not being an adequate reason for withdrawal of plea, there's also cases that talk about gross mischaracterizations of likely outcome. The McKinley case, which is cited, the E.S. Sun case, which is cited. This was a gross mischaracterization, a gross error, a gross deviancy standard that we expect of defense lawyers. And that's the state of the record. Well, you don't really. The problem is we don't we don't know that with any level of confidence when there's no statement of the lawyer. The lawyer is not subpoenaed to testify at an evidentiary hearing. The lawyer doesn't give an affidavit. It is the state of our record, though, judge. And we would submit it's adequate. The district court judge makes your very same point. He said in his concluding remarks, there's sort of a negative pregnant here, he says. I had to look up what that meant. It means a denial in form, but in fact, an admission. And so I guess what he was saying is the fact that you did not have this defense lawyer testify is implicitly admitting that he did not blow the career offender recognition. Well, I don't know. I don't know whether he did or not. I'm not saying you admitted it. I'm not saying that by failing, not suggesting that by failing to subpoena the lawyer, your client has admitted that the lawyer advised him of career offender status. However, I'm just saying under a lot of our precedent, these kinds of issues are handled with a habeas proceeding where a full and fair record can be made of exactly what the lawyer advised the person and why. I hear the guy got from, as I understand it, the accused went from a risk of a 30 year sentence to a risk risk of max 20 years. So in other words, he got something here, even if he got more than he expected. Sure. And that's all well and good. So how do how do we know that the lawyer didn't advise him? You know, you could get career offender status and you might get such and such, but I'm hoping you won't. How do we know that when there's no record? We're confined with the record that we have in the record. But why should we act on that on a direct appeal when that when a habeas proceeding is the normal vehicle for making a record of those things? I thought we were I thought that we were allowed to find ineffective assistance on direct appeal if the record. I don't know if this is the exact standard, but, you know, more or less if the record could only permit one conclusion, like if it compelled a conclusion. But here I just don't I think the record's a little too sparse for me to comfortably to reach that conclusion that it was it's a compelled conclusion. I assume that you're in communication with your client. No, I'm not. I've tried to, but he's back in Virginia somewhere. And no, I wonder if we granted what you if this case continues on and he gets what he wants and he goes back and gets a new trial and gets 262 months instead of 151. He will then complain that you didn't talk to him. And as a result, he was better off if he'd never gotten a new trial. Judge, he is the one who has directed this proceeding. He is the one that asked to have his plea withdrawn. He is the one that testified. And it may seem not the most prudent decision, but it's his to make. The government in a supplemental filing directed the court's attention to the case of Dominguez Benitez. And in it, on the last page, the court says it may be a matter of choice, which is foolish. This has been its choice. Let me ask you a question under your time, Scott. Assuming that we don't get into the issue of effective assistance of counsel. Do you concede that without that, that the that we would have to affirm that is that he was given enough warning by the judge when he was under oath under the rule 11 colloquy that he was well advised. I guess I wouldn't concede that, Judge. On what basis? Just on that basis. Would you would you argue if we didn't get into the ineffective assistance that there's insufficient information for its waiver? Let's say that the attorney didn't commit ineffective assistance, but nevertheless advised the client, as is the state of the record, that he was likely going to get 87 months. When, in fact, a career offender was staring him in the face clearly in order to make an informed and intelligent, knowing, voluntary choice, the client should be given that information. Provided under if you're under oath and the judge tells you you're going to get you can get a lot more than this. And don't your lawyer may give you a prediction. But it's up to me and the prediction. You understand that you may get the full boat. And under oath, he says, yes, I understand that. That doesn't isn't school out as far unless you get your argument before us of the ineffective assistance. I mean, why don't we have the rule 11, please? I sat as a district judge and given rule 11, please put the defendant under oath. Why do we do all of that? To make sure regardless of who anybody told him, whether it was his lawyer or the jailer or his friend or his mother or father, that they understand. And we don't accept rule 11, please, until we're confident, as a matter of fact, that the waiver is appropriate. It seems to me that that we need a little more than that. If if what we have before us is all we have here, the lawyer may have made a mistake. But that's the reason for rule 11, please. To make sure we overcome. I guess I conclude by saying that if there is such a gross mischaracterization of working the guidelines and the likely outcome of the sentence. The predictor. I'm sorry. He made it the prediction. Well, I wouldn't call it a prediction because there are the case laws replete with cases where mere predictions aren't enough to support a withdrawal of guilty plea. But there's another line of cases that call it gross mischaracterization. And I would rely upon those cases which we cited as support for our judge ever make a finding to the district court ever make a finding with regard to whether there was, in fact, a misrepresentation or error made by the lawyer. I am not positive and I do not recall the judge characterized it in terms of finding. But I do recall the conclusion of the evidentiary hearing. Judge said, sir, we have sort of a negative pregnancy here, which means which I took to me that because you did not call your attorney, you are tacitly admitting that you were properly. You could also mean just that the judge doesn't think you meet a burden of showing at this stage that there's an effect of assistance. Good. But I took I took away from that hearing the negative pregnant comment to be almost a less satisfactory evidence sort of position. And I submit that's not correct. We established the threshold burden through our testimony and we submit that was adequate. OK, we're going to have to move on because we've got a lot of I understand. But I want to get this point down, if you don't mind. In the waiver agreement, he says, if my attorney or any other person is calculated, I was free. I know that this is only a prediction. He signed that. And then under oath, by accepting the benefits of the agreement and a sentence term of less than 20 years, you waive any and all rights appeal and all believable statutory rights. He says this under oath. He agrees to that. And then once more in the court say, if your attorney and he wants to predict the range, it's only a prediction because the judge decides that this is what we have in the record. Now, he's been advised by the court, the black rope. It is a prediction. Now, what case do you have where regardless of what he told him, once the judge has told him it's only a prediction, I'm going to make the decision and he agrees under oath that that's the game plan, that we can overturn that. Several cases we cited in our. And I've read them. And what's your closest case under these facts? The Michelin case. Michelin case is your number one case. It goes hand in hand with the. What I ask is your strongest case. I'll I'll pick Michelin. Thank you. Thank you very much. Thank you, counsel. We thank Mr. Fredericks. And now, Mr. Is it a partner? Thank you. Two distinguished lawyers from Eugene. Appreciate your coming. I think I'm a lawyer. That's a blistering cross-examination. And I like to think what I did was just ask me if you understood his plea agreement. He understood what he was getting into. I did inform the defendant during the plea colloquy. Toward the end, I brought up Judge Hogan's intention and the defendant's intention. It's on page two, the supplementary excerpt from the record. And it was just before the acceptance of the guilty plea. In fact, Judge Hogan just said, I'll accept the guilty pleas. And I said before accepting the plea, I want to make sure the defendant understands that under the relevant facts, that the government is going to bring the court's attention and the probation's attention. It's the fact the government contend he has acquired delivery of a controlled substance conviction in 1994. The felony assault, a second degree conviction, two counts in 1995. I mean, that's a little oblique, though. I mean, in the sense that if he knew that there was such a thing as a career criminal offender problem, then he wouldn't know what you were talking about. But his testimony under oath at the sentencing hearing was, during the conversation with your attorney, did the phrase career offender ever come up? No, he didn't tell me anything about that. And you didn't either. I mean, it would have been very simple to have simply said, you know, there's a career offender provision. And he didn't realize that your convictions might be relevant to what you said. You're absolutely right. The problem I have, I guess, is an old prosecutor. If you say career offender, they come back and say, I don't know what that meant. Why am I a career offender? If you say you have these prior convictions. But you didn't say what the consequences were. You said we're going to be bringing it to the court's attention. Now, if it turns out that his testimony under oath later was correct, i.e., or at least the inference one might make from it, which is that his attorney told him about the 87 months and never told him, although he knew, unlike in some of the other cases, he knew what his past record was and did not tell him about the career offender possibility, couldn't that make his original plea not knowing involuntary? Could it? I don't think so. None of these are. It's not a prediction problem. Well, let's take a hypothetical. Suppose the lawyer had specifically told him under the guidelines all you could get is 87 months. Your past record isn't going to matter. There's no legal way it can matter. Suppose he had told him that. Then what? Then would there be an ineffective assistance issue, which would vacate the no appeal provision? If you're ahead of me, but the answer is, and I think it's been raised several times by this Court, is that would be a wonderful hearing for an ineffective assistance of counsel, a hearing that we did not have in this case. What we had in this case is we have the government saying you waived your rights. We go through a plea colloquy that I think is very extensive. Could I have done a better job and said, by the way, you have these convictions? And what this means is that you're a career offender. I'm careful about saying those things. The case that I've cited for you, the Benitez case, if I pronounce it correctly, in that case the prosecutor and defense lawyer didn't know the man had prior convictions that qualified him for a higher sentence. The Ninth Circuit said, well, lacking that, you know, that wasn't a, you can withdraw your guilty plea. The Supreme Court said, unanimously said, nope, don't do that. And the reason why I turn that into an answer to your question about ineffective assistance of counsel is the issue before this Court was, can he withdraw his plea to Judge Hogan, abuse his discretion? But the issue now is whether he can appeal. Well, that was my first issue I raised. But that is the issue. And doesn't our case law establish that that turns in part on whether there was an effective assistance? So isn't this different than the usual case in which we send people off to habeas? Because if there was an effective assistance, he would get an appeal, and the consequences are somewhat different. If your argument is, does the waiver of appeal, or your question is, is the waiver of appeal he signed, and that was discussed during the plea colloquy, and that I've raised before you, can that be voided because it was involuntarily given because his attorney gave him a bad prediction about his sentencing? Not prediction. Take my hypothetical for now. A clearly erroneous legal statement. Okay. Taking your hypothetical, the answer still is, in my opinion, no. Because what you then have put yourself in a position of is I've negotiated for a waiver of appeal. I've covered, I think, the basis in the plea agreement. I think I have a defendant here, and I'm entitled to bring it up because of the numerous defendants sitting in this plea agreement, that I've got a defendant here who's been through the criminal justice system quite a few times. In this instance, he's had, in this case, three lawyers. He had a death. Mr. Kliegel, to begin with, returned under attack. What you're really saying is that the judge was entitled to disbelieve him, and the judge may have been entitled to disbelieve him, but the judge, as I understand it, never made a ruling. As far as whether. As far as whether, in fact, the lawyer did not make any legal misrepresentations to him. Well, actually, on page, Supplementary Excerpt of Record 142, I have the transcript of Judge Hogan's findings. He distinguishes the Toothman case because, of course, in Toothman, if you've read the case, I wish that that was argued by Mr. Cruttick before the case. But in Toothman, the judge asked the defense counsel and the prosecutor what the sentencing guidelines were for the defendant, and then the defendant relied upon that, and it turned out to be inaccurate. And the motion to withdraw a guilty plea was allowed by this court. So Judge Hogan says the facts are different here, and he explains why. First of all, he points out, and he's assuming, on page, Supplementary Excerpt of Record 142, toward the bottom. And I'll read this to you. It's a negative comment that Mr. Cruttick's commented about. There's kind of a negative comment being offered to the court that the defense attorney blew the career offender issue. Okay, so, Judge, we have Judge Hogan here thinking maybe the same way you're thinking, is that the attorney, although there's no evidence of it, blew the career offender issue. But that's made without evidence from the attorney. That's what's concerning this court, and that's the reason why. Right, but he didn't make a finding. He just said there's no evidence. That's right. He didn't make a finding either way, right? That's correct. But he goes on to say, and even if that was the case, so he's assuming it. Judge Hogan's thinking, okay, let's assume. There's no fact finding. That's right. So he neither believed nor disbelieved. Your hypothetical to me was let's assume that's happened. That's right. He's assuming that happened. Exactly. A perfect attorney doesn't exist. And the question that Judge Hogan saw, which is the same question I present to this court, is whether a defendant has been properly informed of the range of consequences that could occur. And then he says, I think for the benefit of our system, we need to take the sworn declaration for the plea proceeding as something of an important value. So he's ruling, as I understand it on my hypothetical, and he is saying even if I made a fact finding that, in fact, the lawyer either didn't inform him of a queer criminal or misinformed him, nonetheless, the plea proceeding would have governed and there would be no possibility of withdrawing the plea. That's correct. The term Judge Hogan used was assuming the attorney blew it. Yeah. And if, you know, I think Judge Hogan, it's possible Judge Hogan is going too far if he's saying that the plea colloquy could cure anything that the lawyer might have told the client. I'm not sure. But I feel like there's a line of precedent that says we shouldn't be trying to reach that issue in this proceeding. And there's a case, U.S. v. Quintero Barraza, which is a Ninth Circuit case, 78 F. 1344. And U.S. v. Sager. I think there are a lot of cases where we say that we're not going to assess IAC unless we have a better evidentiary record. Since you mentioned Sager, the citation is 227. I've got the citation right here. Doesn't that line of authority, in a sense, answer the issue that Judge Prezan is raising more effectively than what Judge Hogan did, which was he said, assuming the worst case, it doesn't matter, which may or may not be right. But what we ought to be saying here is there's no record that the lawyer said this to his client. The reason why I was citing back the Sager case to you, Your Honor, was at page 1149. I kind of anticipated you'd be saying that. There's a quote there that deals exactly with that issue, which says, Ineffective assistance claims are ordinary lawful collateral abuse. I've got that cite. That's why I'm pointing it out to you. But I'm also saying that. I want to know if you agree that that line of authority should resolve this case, because that's what I was putting to Mr. Frederick. It seems to me that that line of authority, at least for me, tells me not to wrestle with this IAC claim now. My position is as follows. First of all, I negotiated on behalf of the government a valid waiver of appeal. We shouldn't be here to distance the lack of jurisdiction. I've made my argument in my brief. Second question, the burden that he had when he filed his motion withdrawal plea was clearly set forth now by the Supreme Court in the Dominguez-Benitez decision, which says he has the burden. He had the obligation to put the attorney on the stand, and the burden there was clear. And the court, interestingly enough, in Dominguez-Benitez commented the same as Judge Hogan, is that we need to take the tennis at their word in the plea proceeding, and therefore the government's position is they have not met their burden, and if you didn't reach that issue beyond the waiver, the conviction should be affirmed on that ground. If you wish to state in your opinion that we'd leave for another day, whether or not this constitutes an effective assistance, and there should be a habeas proceeding so that the record could be fully developed and sightseeker, the government would agree that would be procedurally the correct approach to take. Mindful of the fact that my argument would be at that point there was no prejudice because of the plea colloquy that I've argued today and because he knew he was getting into it at the time, but I'm getting ahead of myself. Normally that issue, whether the plea colloquy would cure any problem the lawyer created, would be assessed when you knew what the lawyer said normally. So anyway, I don't want to take up more of your time. I think your time's up. Let me ask a question if I could squeeze in here for just for a second. On page 15 of your brief. Page 15 of my brief. Yes, Your Honor. You say about two-thirds down in the third full paragraph, defendant was warned that he was certainly going to get a long sentence because of his prior convictions. Yes, Your Honor. Now I looked at SR 141 and that is the argument portioned before the judge. It had nothing to do with Rule 11. Give me one moment. I think I may have the reason why that was put in there. I'm going back now to the plea colloquy. Toward the end when I brought it to your attention. I understand. I didn't know why you cited page 141. That clearly is not correct. I should have cited. I'm sorry. It should have been page 14. Transcript page 14. Supplementary excerpt of record 53. After I go through my warning of the defendant, perhaps not as complete as it should have been. The court says to the defendant, do you understand? Through the interpreter, the defendant says, yes, I. You're at page now. Supplementary of excerpt of record page 52. Page 13 and 14 of the plea colloquy. Okay. Now, that's the part where you said you're going to bring to the attention of the court prior. We'll bring up a sentencing before entering the voluntary of his guilty plea. But you say in your brief was certainly going to get a long sentence. Correct. And then you cited your argument, which is irrelevant. And that's correct. But if you cited this, would you still make the statement he was certainly going to get? I would. And I will tell you why now. Okay. As you read the rest of supplementary excerpt of record page 52, the court asks Mr. Geronimo, do you understand that after I give what I think is a warning? I'm rattling my tail saying I'm going to bite you. And the defense says through the interpreter, yes, I do. The court then says, and do you understand that if the court agrees with those facts, it will likely affect the extent of your sentence? And the defendant, through his interpreter, says, if possible, the court says, I'm sorry. The defendant says, through interpreter, yes. And then the court says, do you still wish to enter your guilty plea? And through the interpreter, he says, yes. My argument is Judge Fogan is saying at that point this would likely affect the extent of your sentence. It's not that it was going to affect the extent of your sentence by reducing it. But it could affect it by making it six months longer, not, you know, five years longer. Well, the problem I have, if I could just conclude, is I think that you could have been more careful in the brief. You cited to the wrong place. And when you get to it, it really doesn't say it was certainly going to. I have one last question, which is. First of all, I apologize to the court for that interpretation. It's all right. I know how these things are. Is there any case in which the structure was the same as here? That is, there was an appeal waiver and a claim that we know that, in general, the appeal waiver stand unless the whole plea is not a knowing and voluntary plea. And there is also a case that that can include ineffective counsel. That's the Michelin point since then. So when that's the case, do we then go to the line of cases saying you do that on habeas? To do that would totally undermine. You would never answer the question whether or not the person can appeal, which is why we're doing all this. I suppose, then, the answer to your question is saying how procedurally do we get to the question if the defendant is claiming that his counsel made his plea involuntary? And, by the way, the defendant did so testify during the hearing on the motion. I understand that. So that's why I don't understand why the general rule with regard to ineffective assistance can apply to this problem when what we're ultimately trying to decide is whether there's an appeal before us. And my answer, I guess, has to be, given the record we have before us, can this court make a finding or a claim? No, we can't make a finding, but the district court should have and didn't. Following your line of cases, determining whether or not plea waiver applies, the court below, Judge Hogan, could have made that finding. Perhaps he could have, but he didn't. And he didn't. Right. But I don't know if that answers your question, but that's how this is. Well, it answers my question structurally because it suggests to me that we don't go to the line of cases about ineffective assistance usually on habeas. Rather, we tell Judge Hogan, make a finding. In fairness to Judge Hogan, as I will defend my judge, is that the question before me on the motion to draw a guilty plea is not the validity of the plea waiver. No, I understand that. But it's functionally the same question because he was claiming an offense. I understand your frustration. Okay. Well, we have got lots of views from the lawyers and from the judges.  We thank you both. This case will be submitted. Let me ask, Mr. Fredericks, you had used up your time. Both sides went over. Did you want a minute to reply? No, I have enough time. Okay. Thank you. Anyone have questions? All right. Thank you both. Have a good, safe trip back to Eugene. I'll be back, sir. Okay. Well, then don't go back to Eugene too fast. The next case, I guess it's Henderson. No. Okay. Henderson versus.
judges: Wallace, Gould, Berzon